UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____
                                                          )
In Re: COOK MEDICAL, INC., IVC FILTERS  )
MARKETING, SALES PRACTICES AND     )   Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION            )   MDL No. 2570
_____ )
                                                          )
This Document Relates to:                         )
      1:14-cv-6018-RLY-TAB    Brand           )
_____ )

# ORDER ON DISCOVERY MOTIONS

## I. Introduction

This order addresses five motions: (1) Plaintiff Tanya Brand's motion to quash the deposition of Behnood Bikdeli, MD [Filing No. 8941]; (2) Brand's motion to quash the deposition of Aakriti Gupta, MD [Filing No. 9463]; (3) Brand's motion to compel discovery related to Cook's expert, Dr. David Gillespie [Filing No. 9215]; (4) Cook's motion to compel Brand to pay her share of a deposition feel [Filing No. 9393]; and (5) Brand's motion for leave to file a belated response to Cook's motion to compel her to pay a share of the deposition fee. [Filing No. 9596.] These motions come in the leadup to the third bellwether trial in this MDL.

## II. Drs. Bikdeli and Gupta

Brand moves to quash the depositions of Dr. Bikdeli and Dr. Gupta. Drs. Bikdeli and Gupta are consulting experts who worked with Brand's testifying expert, Harlan Krumholz, MD, to prepare his expert report. Drs. Bikdeli and Gupta also attended Dr. Krumholz's deposition, assisting him by telling him on which pages to find specific information. Cook argues that Drs. Bikdeli and Gupta were "'seamless collaborator[s]' who worked 'hand-in-glove' with Dr. Krumholz, and the 'fruits of their labor are indivisible.'" [Filing No. 9396, at ECF p. 2 (citations

omitted).] Cook contends this collaboration entitles it to discovery into Drs. Bikdeli and Gupta, including video depositions and production of (1) emails, (2) billing records, (3) notes and drafts of publications, and (4) raw data and communications related to literature surveys.

Cook does not address the fact that the deadline for expert discovery—June 29, 2018—has long passed. With the deadline long gone and the January 14, 2019, trial just around the corner, the Court is disinclined to permit additional expert depositions and discovery. The Court appreciates the parties' efforts to resolve this dispute amongst themselves, but as the 11th hour approaches, the untimeliness of these proposed depositions cannot be ignored. Still, the Court does not preclude these depositions on this basis alone.

Discovery into a consulting expert is governed by Rule 26(b)(4)(D), which tracks the work product doctrine in its strict limits on discoverability:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or
>
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D); *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012) ("This rule is simply an application of the work product rule."). Rule 35(b) is inapplicable, so to depose Drs. Bikdeli and Gupta, Cook must show exceptional circumstances making it impracticable for it to obtain comparable facts or opinions.

Cook makes no effort to argue that obtaining other facts or opinions on the subject is impracticable, and the Court is not convinced that exceptional circumstances exist to overcome the protections afforded to consulting experts. Instead, the Court believes deposing Drs. Bikdeli and Gupta would be unnecessarily duplicative. Cook deposed Dr. Krumholz for a full day,

producing a 325-page transcript. As Cook points out, it saw that Drs. Bikdeli and Gupta attended the deposition and helped Dr. Krumholz find information in the report. Cook took time at the deposition to question Dr. Krumholz about the extent of Drs. Bikdeli and Gupta's involvement. Deposing them about the extent of their involvement serves no purpose. Cook's argument that it needs to depose Drs. Bikdeli and Gupta to examine Dr. Krumholz's methodology is unpersuasive. Cook has the report, and its own experts can analyze and review the methodology to challenge Dr. Krumholz's conclusions and methodology. *Sara Lee Corp. v. Kraft Foods Inc.*, 273 F.R.D. 416, 420 (N.D. Ill. 2011).

Cook relies on *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 31 (W.D.N.Y. 2002); *Estate of Manship v. United States*, No. CV 04-C-91-M2, 2008 WL 11351590 (M.D. La. Mar. 10, 2008); *Long-Term Capital Holdings v. United States*, No. 01-cv-1290(JBA), 2003 WL 21269586 (D. Conn. May, 6, 2003); and *Derrickson v. Cir. City Stores, Inc.*, DKC 95-3296, 1999 WL 1456538, at *7 (D. Md. Mar. 19, 1999), *aff'd sub nom. Johnson v. Cir. City Stores, Inc.*, 203 F.3d 821 (4th Cir. 2000). Each of these cases stands for the proposition that, if an assistant does so much of the testifying expert's work that the methodology supporting the expert's conclusion is "exclusively within the assistant's cognizance," then deposing the assistant is necessary to provide the party an adequate chance to cross-examine and probe the expert's conclusion. *Herman*, 207 F.R.D. at 31 (quoting *Derrickson*, 1999 WL 1456539, at *8).

Cook fails to show Drs. Bikdeli and Gupta's involvement was exceptional. Cook emphasizes that Drs. Bikdeli and Gupta are experts in their own rights and not merely research assistants, that they frequently corresponded with Dr. Krumholz, were paid separately from Dr. Krumholz, and attended and assisted during Dr. Krumholz's deposition. Yet, it is not uncommon for consulting experts to do what Cook describes. Consulting experts are typically separately

3

paid experts who counsel the testifying expert, which may involve attending and assisting at depositions.  Cook stressed the fact that Dr. Bikdeli created data charts Dr. Krumholz incorporated into his report.  But the fact that Dr. Bikdeli put together the data charts does not mean the underlying data and its implications are exclusively within Dr. Bikdeli's mind and out of reach through cross-examination of Dr. Krumholz.  Further, while the number of hours Dr. Krumholz billed for drafting his report appears particularly low in light of his 179-page, 130-footnote report, Dr. Krumholz signed the report as his own conclusions, and Cook fails to show Dr. Krumholz was unable to answer its questions about his report, his conclusions, or his methodology.  The excerpts from the deposition transcript Cook cites show Dr. Bikdeli was more familiar with the pagination of the report, but they do not show information was hidden from Cook within Dr. Bikdeli's mind.

With regard to Dr. Bikdeli and other experts, Cook argues Brand's testifying causation expert and biostatistician cited Dr. Bikdeli rather than Dr. Krumholz.  Brand's causation expert, Gregory Gordon, MD, relied on the same data charts Dr. Bikdeli put together for Dr. Krumholz and deferred to Dr. Bikdeli as the authority on those charts.  However, this does not show the methodology behind the charts is exclusively within Dr. Bikdeli's mind; it merely shows he created the charts, and that Dr. Gordon is unfamiliar with the underlying data and methods.  Brand's biostatistician, Rebecca Betensky, Ph.D., testified at her deposition that she relied on Dr. Bikdeli and that she followed "the instructions Dr. Bikdeli gave [her.]"  [Filing No. 9396, at ECF p. 6.] However, an expert taking cues from a consultant is little different from an expert taking cues from an attorney—it is not exceptional, and Cook can use any possible bias to try to discredit Dr. Betensky.

In sum, Cook fails to show exceptional circumstances exist such that it should be permitted to depose Drs. Bikdeli and Gupta. Because of this failing, particularly given the expired expert discovery deadline, the Court grants Brand's motions to quash the subpoenas of Dr. Bikdeli [Filing No. 8941] and Dr. Gupta. [Filing No. 9463.]

**III.    Dr. Gillespie**

Brand moves to compel discovery related to Cook's testifying expert, David Gillespie, MD. Brand seeks (a) email and other correspondence between Dr. Gillespie and Cook's counsel; (b) drafts of Dr. Gillespie's expert report; (c) the identity of the person(s) who typed Dr. Gillespie's drafts and final expert report, along with the identification of the portions typed by each such person; and (d) responses to Request Nos. 3, 5, and 6. Brand argues she is entitled to this information because it appears that Cook's counsel drafted the report and gave it to Dr. Gillespie to adopt and present as his own. Cook responds that it merely provided Dr. Gillespie "clerical assistance," and that even if Cook's counsel had written it, the documents Brand seeks would still be protected by the work product doctrine, more specifically Rule 26(b)(4)(B) and (C). Cook also relies on the parties' agreement to limit discovery into communications between counsel and expert witnesses. The Court denies Brand's motion to compel.[1] [Filing No. 9215.] The drafts and communications are protected work product and/or excluded from discovery by agreement, and Brand fails to persuade the Court she is entitled to know who typed which portions of Dr. Gillespie's report. Further, the specific responses Brand seeks have already been produced, have no responsive documents, or are protected from discovery by agreement.

---

[1] Accordingly, the Court denies Brand's request under Rule 37(a)(5)(A) for expenses incurred in making a successful motion to compel.

Discovery into the trial preparations of experts is governed by Rule 26(b)(4). Subsection (B) provides: "Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." And Subsection (C) of that provision extends work product protections to related communications, providing:

> Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> (i) relate to compensation for the expert's study or testimony;
>
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C).

Brand first argues that Cook's counsel drafted Dr. Gillespie's report, so she is entitled to discover all drafts of Dr. Gillespie's report as well as all communications between Dr. Gillespie and Cook's attorneys. Brand walks through a long list of statements by Dr. Gillespie at his deposition, inconsistencies in his billing invoices, and an errata sheet making many changes to Dr. Gillespie's testimony, all of which suggest Dr. Gillespie did not write his expert report. Cook admits it provided "clerical assistance," including typing portions of the report because Dr. Gillespie does not have a secretary. But Cook denies that its attorneys wrote the report for Dr. Gillespie and tries to explain the inconsistencies.

Brand and Cook agree that the Court does not need to decide whether Cook's attorneys drafted Dr. Gillespie's report for him. Instead, they each hang their respective hats on legal arguments. Brand argues that evidence of extensive involvement is enough to make the drafts of the report and communications between Cook's attorneys and Dr. Gillespie discoverable. Cook responds that Brand relies on cases that apply an old version of Rule 26, which was changed in

6

2010 to strengthen protections. Cook argues that under the current version of Rule 26, even if its counsel had authored the entire report, the communications and drafts would still be protected.

In its notes regarding the 2010 amendments to Rule 26, the Advisory Committee explained the explicit purpose of the changes was "to alter the outcome in cases that have relied on the 1993 formulation [of Rule 26] in requiring disclosure of all attorney-expert communications and draft reports." Fed. R. Civ. P. 26 advisory comm. n. (2010); s*ee U.S. ex rel. Wall v. Vista Hospice Care*, 319 F.R.D. 498, 506-08 (N.D. Tex. 2016) (discussing the purpose and effect of the 2010 change); *U.S. Commodity Futures Trading Commn. v. Newell*, 301 F.R.D. 348, 352-53 (N.D. Ill. 2014) (same). Brand quotes strong language condemning the practice of some attorneys to ghost write expert reports. [Filing No. 9216, at ECF pp. 12-13 (quoting *Johnson v. City of Rockford*, 15 CV 50064, 2018 WL 1508482, at *4 n.1 (N.D. Ill. Mar. 27, 2018); *Vista Hospice Care*, 319 F.R.D. at 510; and *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 578 (W.D. Tenn. 2009)).] However, the respective courts did not order production of drafts or communications in any of these cases.[2] *Id*.

Regardless of how extensively Cook's counsel was involved in drafting Dr. Gillespie's expert report, Brand is only entitled to the facts and data Dr. Gillespie considered and the assumptions Dr. Gillespie relied on, in accordance with Rule 26(b)(4)(C)(ii) and (iii). Following a persuasive analysis, the *Vista Hospice Care* court concluded that the exceptions in Rule 26(b)(4)(C) apply to drafts of expert reports, thereby allowing some discovery. *Vista Hospice Care*, 319 F.R.D. at 508. However, rather than producing drafts of expert reports as under the 1993 version of Rule 26, subsection (C) permits limited discovery, and only requires the party to

---

[2] The court in *Bekaert Corp.*, 256 F.R.D. at 578-79, struck the expert, but that case was decided in 2009 under the earlier version of Rule 26, and Brand does not seek to strike Dr. Gillespie.

7

"(ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; [and] (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(ii)–(iii); *Vista Hospice Care*, 319 F.R.D. at 507-08. Requiring a party to produce more would directly contravene the purpose of the 2010 amendments to Rule 26. *Vista Hospice Care*, 319 F.R.D. at 507-08; *Newell*, 301 F.R.D. at 353.

Brand next argues that she is entitled to know who typed Dr. Gillespie's expert report and the drafts of it, including which portions each person typed. Brand relies on *Johnson v. City of Rockford*, 15 CV 50064, 2018 WL 1508482, at *5-7 (N.D. Ill. Mar. 27, 2018), in which the court found that Rule 26(b)(4) does not protect the identity of the person who typed the expert report, including which sections the person typed. Cook argues that this court should not follow *Johnson*, contending the decision is unpublished, non-binding, and was wrongly decided. Cook further asserts that, regardless, *Johnson* is inapplicable to drafts.

Brand is not entitled to drafts of Dr. Gillespie's expert report, so ordering Cook to disclose who typed which portions of the drafts is nonsensical. But even if she were entitled to them, the *Johnson* court expressly limited its conclusion to the final report. *Johnson*, 2018 WL 1508482, at *5. In fact, in making its first point in favor of identifying who typed which portion, the court emphasized that the document at issue was the final report and not a draft. *Id.* ("First, Mr. Libby's report is not a draft. It is the final report, which was disclosed to the Defendants.").

Whether Brand is entitled to know who typed which portions of the final expert report is a closer question, but the Court finds Brand is not entitled to such detail. The courts in *Vista Hospice Care*, 319 F.R.D. 498, and *Newell*, 301 F.R.D. 348, analyzed the effect of the 2010 amendments on discovery into communications between counsel and testifying experts. Both

courts emphasized that the amendments were intended to change the law to afford greater protection. *Vista Hospice Care*, 319 F.R.D. at 505-06; *Newell*, 301 F.R.D. at 352. And both courts eschewed diving into the details of the drafting process, instead emphasizing that discovery into the drafting process is expressly limited to the exceptions listed in Rule 26(b)(4)(C). *Vista Hospice Care*, 319 F.R.D. at 507; *Newell*, 301 F.R.D. at 353.

The identity of person who typed which portions of Dr. Gillespie's report does not fall into either of the applicable exceptions. Rule 26(b)(4)(C) excepts from protection "facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed" and "assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(ii)–(iii). The identity of the person who typed which portions of the report is not "facts or data" or an assumption that the expert considered or relied upon in "forming the opinions to be expressed" in the report. It strains the imagination to think Dr. Gillespie considered or relied on the who typed which portions of the report in forming his opinions, which are expressed in the report.

The Court respectfully declines to follow *Johnson* in the present case. As a preliminary matter, the decision is non-binding precedent and no reported cases have yet followed this relatively recent opinion. Second, the 2010 amendments to Rule 26 sought to end extensive and burdensome discovery into communications between counsel and testifying experts. *Vista Hospice Care*, 319 F.R.D. at 505-06; *Newell*, 301 F.R.D. at 352; Fed. R. Civ. P. 26 advisory comm. n. (2010). Permitting discovery into who typed which portions of the final report, but not the drafts, unnecessarily splits hairs. In this case, the Court declines to reopen a door to discovery that the 2010 amendments expressly closed.

Brand next argues that the exceptions under Rule 26(b)(4)(C) nonetheless entitle her to responses from Cook to her Request Nos. 3, 5, and 6, which were served in connection with Dr. Gillespie's deposition. Her arguments are not persuasive. With respect to Request No. 3, Brand contends that Cook provided facts and data Dr. Gillespie relied on, but not all the attorney-provided facts and data Dr. Gillespie considered. Brand is correct that Rule 26 entitles her to that information. Fed. R. Civ. P. 26(b)(4)(C)(ii) (excepting from protection "facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed"). However, Brand and Cook have an agreement governing this discovery process that allows them each to withhold communications between counsel and expert witnesses, even if Rule 26 permits the other side to discover them. [Filing No. 9326-2, at ECF p. 2.] Instead, the parties provide each other a list of things counsel gave the expert and that the expert relied on. [Filing No. 9362, at ECF pp. 12-13.] Indeed, Brand has relied on this practice in responding to production requests in connection with her experts, Dr. Gordon, Michael Fishbein, MD, and Dr. Krumholz. [*Id.*] The same analysis applies to Request Nos. 5 and 6, but Cook adds that it has no responsive documents for Request No. 5, and that it provided responsive documents to Request No. 6 at Dr. Gillespie's deposition. Notably, Brand did not reply to Cook's arguments, lending them credence. Therefore, the Court will not compel additional responses to Request Nos. 3, 5, or 6.

The Court denies Brand's motion to compel [Filing No. 9215] because Brand fails to show she is entitled to discovery into Dr. Gillespie under Rule 26(b)(4)(B) and (C) and the parties discovery agreement.

## IV. Dr. Uberoi's Deposition Costs

Cook asks the Court to compel Brand to pay her proportionate share of Dr. Raman Uberoi's deposition fees. The parties deposed Dr. Uberoi for seven hours, with Brand taking five hours and Cook using two. By agreement, each party is responsible for the deposition fees of its own expert witnesses, but the parties split the deposition fees of treating physicians, who are fact witnesses who happen to also be experts. Cook argues Brand should pay her share of Dr. Uberoi's hourly deposition fee because he is a disinterested, third-party fact witness, akin to a treating physician. Brand responds that Cook may call Dr. Uberoi a fact witness, but he in fact is Cook's paid expert witness, making Cook responsible for his fees under the agreement.

The Court cannot decide in this order whether Dr. Uberoi is Cook's expert or merely a fact witness who happens to be an expert. Brand filed a motion to strike Dr. Uberoi as a witness, and argues, among other things, that Dr. Uberoi should be stricken because he is Cook's expert and Cook failed to provide an expert report. The District Judge has taken Brand's motion under advisement, and it remains pending. [Filing No. 8688.]

Because the Court cannot resolve the dispute based on the parties' agreement, the Court looks to the rules of procedure and the Case Management Plan to determine who pays a witness's fees. Rule 26(b)(4)(E) requires the party seeking discovery to pay the deponent's fees. Case Management Plan No. 20 further instructs that "[t]he noticing party shall be responsible for paying the provider for his or her time during the deposition." [Filing No. 3071, at ECF p 5.] Both Brand and Cook served notice of the deposition, which strongly suggests they split the fees. As noted above, the parties agreed to an uneven split of the deposition time. Brand's counsel had four hours for direct examination of Dr. Uberoi, Cook's counsel had two hours for cross examination, and Brand's counsel had one hour for re-direct. Splitting Dr. Uberoi's fees

11

proportionately to the time they each spent questioning Dr. Uberoi is fair in light of the fact that both parties noticed the deposition.

Brand argues she should not have to split the fees because she outlined her position to Cook's counsel before the deposition, reiterating that she believes that Dr. Uberoi is Cook's witness, so Cook should pay all his fees. Brand's counsel clearly and explicitly told Cook's counsel in an email that Brand will not pay Dr. Uberoi's fees, and if splitting fees is a condition of the deposition, Cook should cancel it. [Filing No. 9597, at ECF p. 2 ("We aren't paying for Uberoi. We oppose the deposition. Whatever you want to call him[,] he is your expert. We will agree to cancel it completely if that is what you wish.").] However, this argument is undermined by the fact that, following this email, the attorneys continued to negotiate and discuss details of the deposition, and Brand's counsel elicited hours of deposition testimony. Counsel decided the deposition would be done via videoconference, Brand would provide the videographer and court reporter, and agreed to the above questioning time split. All the while, Cook argued they should split Dr. Uberoi's fees. Nonetheless, both Brand and Cook noticed the deposition, which is CMP No. 20's method for determining who pays the deponent's fees.

Therefore, the Court grants Cook's motion to compel Brand to pay her proportionate share of Dr. Uberoi's fees. [Filing No. 9393.] This accords with CMP No. 20 and is reasonable given that Brand used five of the seven hours of the deposition.

## V. Conclusion

For the reasons above, the Court grants Brand's motions to quash the depositions of Dr. Bikdeli [Filing No. 8941] and Dr. Gupta. [Filing No. 9463.] The Court denies Brand's motion to compel discovery into Dr. Gillespie. [Filing No. 9215.] The Court grants Cook's motion to compel Brand to pay her proportionate share of Dr. Uberoi's deposition fee. [Filing No. 9393.]

Finally, for good cause, the Court grants Brand's motion for leave to file a belated response, which is deemed timely filed as of the date of this order. [Filing No. 9596.]

Date: 11/21/2018

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.